Aycock Mortgage & Bond Corporation v. Commissioner.
Aycock Mortg. & Bond Corp. v. Commissioner
Docket No. 668.
United States Tax Court
1944 Tax Ct. Memo LEXIS 35; 3 T.C.M. (CCH) 1236; T.C.M. (RIA) 44378; November 25, 1944
*35 H. C. Holbrook, Esq., for the petitioner. Leonard Raum, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: Respondent has determined deficiencies against petitioner in income tax, excess-profit tax and penalties for 1939, and a deficiency in income tax for 1940, as follows: Declared value
excess-profits
Income tax
Penalty
tax
Penalty
Total
1939
$428.10
$21.41
$26.82
$1.34
$477.67
1940
156.86
156.86
Total
$584.96
$21.41
$26.82
$1.34
$634.53
The issues raised by the pleadings involve the correctness of the following actions of respondent: (1) disallowance of losses deducted on its return for 1939 alleged to have been sustained upon the sale under foreclosure of two pieces of real estate; (2) inclusion in petitioner's income for that year and 1940 of certain rentals on real estate collected by petitioner; (3) disallowance of certain deductions reported and claimed for the year 1940 as representing bad debts ascertained to be worthless and charged off in that year; and (4) the propriety of the imposition of 5 per cent negligence penalties for 1939. Findings of Fact Petitioner is a corporation organized *36 under the laws of the State of Georgia, with its principal office at Atlanta, Georgia. Its income and excess-profits tax returns for the taxable years here involved were filed with the collector of internal revenue for the district of Georgia. It makes its Federal tax returns on the calendar year basis and is engaged in the general real estate, insurance and loan business. The petitioner, prior to October 2, 1928, held a second mortgage on improved real estate located at 1277 Euclid Ave., N.E., Atlanta, Georgia. On that date it foreclosed such mortgage and itself acquired the mortgaged property on a bid in the sum of $500, title being taken subject to a first mortgage in the amount of $3,000. At the time of the foreclosure and petitioner's acquisition of the property the balance due on the second mortgage was $3,600. On February 6, 1932, the petitioner conveyed the above-described property by warranty deed to Alvin L. Richards. Richards paid no consideration for the conveyance and was merely a "straw" holder of the title for petitioner. On February 21, 1936, Richards conveyed this property by warranty deed to Mrs. M. R. Pope, who was also a "straw" holder of the title for petitioner. *37 On February 21, 1936, Mrs. Pope conveyed the said property by warranty deed, at request of the president of petitioner, to petitioner. This deed recited a consideration of ten dollars and other valuable considerations but the conveyor was actually paid a small sum by the president of petitioner for making the conveyance at his direction. This deed by Mrs. Pope to petitioner was held by petitioner and not recorded whereas the deeds under the prior conveyances of the property, as heretofore set out, had been put of record. On February 17, 1937, Mrs. Pope executed a mortgage security deed conveying to the State Mutual Insurance Company the property in question as security for a loan of $3,000, and on January 3, 1939 this mortgage was foreclosed against Mrs. Pope by the State Mutual Insurance Company and on the same date Mrs. Pope conveyed by quitclaim deed to that company the mortgaged property. Each of these two last mentioned deeds was duly recorded. On May 5, 1927, the petitioner acquired certain improved real estate at 240 Wellington Street, Atlanta, Georgia, under deed from the trustee in bankruptcy of the estate of Burden Brantley. The deed from the trustee in bankruptcy covering *38 this property also included the land and house located at 860 and 866 West End Avenue, Atlanta, Georgia, and a parcel of land situated in land lot 141-148 of the 14th District, Fulton County, Georgia. All of these three properties were purchased by petitioner for a total consideration of $3,964.10. At the time of the acquisition petitioner held a second mortgage on the Wellington Street property in the face amount of $2,499.10 and a third mortgage on the West End Avenue property in the amount of $1,365, these mortgages thus aggregating $3,864.10. These three pieces of property were bid in together by petitioner with the proviso that the amount bid was to be credited with the total of its mortgage indebtedness against two of the properties amounting to $3,864.10, petitioner paying the trustee in bankruptcy the net sum of $100 for conveyance of the three pieces of property. At some time prior to the hearing in this proceeding petitioner sold the West End Avenue property for a consideration of $2,000 or $2,500 and still owns the unimproved lot in the 14th District, Fulton County, Georgia. On January 7, 1936, the petitioner conveyed the aforesaid Wellington Street property by warranty *39 deed to Mrs. M. R. Pope, which deed was duly recorded. On the same date Mrs. Pope conveyed this property by warranty deed to petitioner at the request of the president of petitioner. This deed was held by petitioner and not recorded. In her receipt of title of the property in question by conveyance from petitioner Mrs. Pope was merely a "straw" holder of title for petitioner. On August 20, 1936, Mrs. Pope executed a mortgage or security deed to this property to the State Mutual Insurance Company as security for a loan and on January 3, 1939, the State Mutual Insurance Company foreclosed the mortgage against Mrs. Pope and on the same date the latter conveyed the property to the State Mutual Insurance Company by quitclaim deed. The foregoing mortgage and deed were duly recorded. There is a six-room bungalow on the Euclid Avenue property on which some repair work was done by petitioner when it acquired it on October 2, 1928, but very little work has been done thereon since that date. There is a seven-room frame house on the Wellington Street property upon which no repairs of consequence were made by petitioner either at the time the property was acquired or in the succeeding years. *40 On March 5, 1935, an improved piece of real estate at 1432 Vaughn Street, Atlanta, Georgia, belonging to M. Gordon, was sold to satisfy a tax levy by the City of Atlanta, representing the cost of curbing in front of the property. Petitioner bid in the property for the amount of the tax and costs, amounting to $42.32. Following the acquisition by petitioner of this property the rents therefrom were collected by petitioner and no action was taken by the prior owner, Gordon, to redeem the property within the twelve-month period permitted by the Georgia statute. In the years 1939 and 1940 petitioner received rentals from this property in the amounts of $265.34 and $167.17, respectively. These collections were not included by petitioner in its income as reported but were included therein by respondent in his determination of the deficiencies. On August 21, 1931, the petitioner loaned J. B. Jackson $250, the loan being secured by a note. No payment of either principal or interest was ever made on this loan. Petitioner made several attempts prior to 1940 to collect the loan from Jackson but was unsuccessful. In 1940 Jackson died and in that year petitioner charged the debt off as worthless *41 and deducted it upon its return. In 1928 and 1929 petitioner loaned Mrs. Lea Rose a total of $2,519.01. On May 2, 1929 the debtor made a payment to petitioner in the sum of $2,400, leaving a balance due of $119.01 upon which no payment of either principal or interest was ever made by her from that date. On several occasions between 1929 and 1940 petitioner's president talked with the husband of Mrs. Rose and was advised in each instance that the latter had no resources with which to pay the debt. In 1940 petitioner charged off the unpaid balance of this debt as worthless and deducted it upon its return for that year. On June 28, 1929, petitioner loaned Mrs. C. I. Snider $580. Mrs. Snider made payments on such loan until December 31, 1934. These payments aggregated $540.79 and left a balance due of $39.21 on account of which no payment either of principal or interest was ever made after that date. Petitioner charged off the unpaid balance of this indebtedness in 1940 and deducted it upon its return for that year. On July 20, 1928, petitioner loaned the Century Investment Company $1,200, secured by a mortgage on real estate. The debtor made regular and numerous payments to petitioner *42 from 1928 to 1933, inclusive, totaling $1,055, and leaving a balance due of $145. No payment either of principal or interest was made on the unpaid balance of the loan after January 14, 1933. In 1940 petitioner charged off the unpaid balance on this loan and deducted this amount on its return for that year. On November 18, 1927, petitioner loaned A. Roy Baker and W. H. Steele, Jr., $600. On this indebtedness payments were made from 1928 to 1931, inclusive, in a total of $540, leaving an unpaid balance of $60, on which no payments either of principal or interest were made since November 25, 1931. Petitioner in 1940 charged off the $60 unpaid balance on this loan and deducted it on its return for that year. In determining the deficiency for 1940 respondent disallowed all of the deductions representing the balances due on these old uncollected loans charged off by petitioner in that year. Opinion The first issue involves the propriety of the action of respondent in disallowing losses allegedly sustained by petitioner upon the foreclosure in 1939 of mortgages on the two properties on Euclid Avenue and Wellington Street, respectively, in Atlanta, Georgia. Respondent contends first *43 that since there is a complete chain of title evidenced by deeds duly recorded, showing conveyances by the petitioner to certain individuals of these properties, and since the recorded instruments show the record title to have been in these individuals and not petitioner at the time of the two foreclosures upon these properties, petitioner can not be considered as their owner or as sustaining a loss by reason of such foreclosures. Assuming, however, that this position is not sound and that petitioner was the actual equitable owner of these properties at the time of the foreclosures, respondent must nevertheless be sustained on this issue. The proof, as respondent argues, utterly fails to show petitioner's basis for either of these properties for the purpose of computing gain or loss on their disposition. Under section 113 of the Internal Revenue Code, the bases for these properties would be their original cost to petitioner adjusted "for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent allowed (but not less than the amount allowable) under this chapter or prior income tax laws". Here neither the original costs or the facts basing those adjustments *44 are revealed by the record. Petitioner has, in each instance, computed its loss by using as the cost, the unpaid balance of the face amount of the mortgage or mortgages held by it against the property acquired and has deducted depreciation at the rate of 4 per cent against the improvements on each property for the period held. An examination of the evidence, however, indicates that, as to the Euclid Avenue property, the face of these mortgages included not only petitioner's actual investment therein but then unrealized profit. In respect of the Wellington Street property, it appears that petitioner acquired this with two other properties for a specified amount bid at a sale by the trustee in bankruptcy. We can not determine from the evidence the comparative values of the three properties. On two of them petitioner held mortgages in face amounts which are shown by the evidence, but the cost to it of these mortgages is not disclosed. One of the three pieces of property so acquired was sold prior to the foreclosure of the first mortgage on the Wellington Street property, but we have no record evidence as to the price obtained and petitioner asks us to determine, from the general recollection *45 of its president, that it was $2,000 or $2,500. The third piece of property acquired in this transaction, of an undisclosed value, has not yet been sold by petitioner. There is no evidence as to how much depreciation actually was taken by petitioner over the periods in question on the properties, the loss on the foreclosure of which is disputed. Even petitioner's president admits that this fact can not be determined from his records by any one except himself. The ledger sheets in evidence confirm this statement. There is no evidence in the record upon which even an approximate rate of depreciation can be determined. The second issue is whether the respondent erred when he included certain rentals collected by petitioner in 1939 and 1940 in petitioner's income for those years. The petitioner acquired the property situate at 1432 Vaughn Street, Atlanta, Georgia, from which it collected these rentals, in March 1925, at a tax sale, for a small consideration, and has held it since that time, collecting the rentals. The president of petitioner testified that the property was bid in by petitioner at the tax sale at the request of its owner, M. Gordon, under an agreement that the property *46 would be held by petitioner and transferred to Gordon as soon as the rents collected by petitioner therefrom were sufficient to repay petitioner for its outlay for taxes and costs. Petitioner's president admits that the rentals on this property have been collected by petitioner, but testifies that it is the intention of the petitioner to return the property to the estate of Gordon, the latter having died in the meantime, as soon as petitioner has received enough rental to reimburse it for its outlay. No written evidence was offered, evidencing any such agreement. Yet petitioner asks us to accept the unsupported statement of its president that the rentals for the two taxable years do not belong to it although collected from property to which it unquestionably holds the record title. And this, in the face of the fact that the expenditures of petitioner in connection with this property, at least so far as here established, were only in the sum of $42.32, though it has manifestly collected, even in the taxable years, an amount largely in excess of this sum. This we will not do. Respondent is sustained on this issue. The third issue involves the correctness of respondent's disallowance *47 of certain deductions reported and claimed by petitioner for the year 1940 as representing bad debts ascertained to be worthless and charged off in that year. It would seem from the evidence that most, if not all, of these deductions were based on unpaid balances on old debts reasonably ascertainable as worthless before 1940. But such a deduction for the taxable year is based by the statute not on its ascertainment and charge-off within that year, but upon the fact of its having become worthless within that year. The amendment of section 23 (k) of the Internal Revenue Code by section 124 of the Revenue Act of 1942, made retroactive to the year 1940, makes this clear by providing for the deduction only of "Debts which become worthless within the taxable year; * * *" Certainly there is no evidence here that any of these debts had a value at the close of 1939 which passed out in the year 1940. Respondent is sustained on this issue. The fourth issue involving the propriety of the imposition of negligence penalties under section 293 of the Internal Revenue Code is decided for the respondent. The insufficiency of the records maintained by the taxpayer in respect to its business transactions, *48 and its carelessness in determining its taxable income, amply justify the imposition of this penalty. Decision will be entered for the respondent.